Quynh Chen (SBN 292889)
Lee & Chen LLP
1904 Franklin Street, Ste 415
Oakland, CA 94612
Telephone: (415) 779-2888
Fax: (415) 738-7873

Attorney for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE HEMP'S FIRST HEMP BANK AND DISTRIBUTION NETWORK, and DAVID CLANCY, | Case No. 3:15-cv-05053-WHA |
| Plaintiff, | **AMENDED COMPLAINT FOR VIOLATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. §1983** |
| vs. | |
| CITY OF OAKLAND, CALIFORNIA, GREGORY MINOR and DOES 1 through 10 inclusive, | **DECLARATORY RELIEF AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF** |
| Defendants. | |

The Plaintiffs JOE HEMP'S FIRST HEMP BANK AND DISTRIBUTION NETWORK and DAVID CLANCY bring this action for declaratory, preliminary and permanent injunctive, and other relief, and on information and belief, hereby allege:

### INTRODUCTION

1.     The Defendant City of Oakland, California ("City") and defendant MINOR (collectively "Defendants") have unconstitutionally exceeded their authority by issuing a final administrative order against Plaintiffs to pay a fine of $3500 to the City of Oakland and in addition $1000.00 per day until the Plaintiffs are vacated from the premises in an unlawful attempt to shut down Plaintiffs' organization.

2.    The Defendants purport to have this authority under City's unlawful marijuana permit scheme, which requires Plaintiffs to apply and register for a dispensary permit.

3.    Oakland Municipal Code §§ 5.80 and 5.81 ("City Permit Scheme") authorizes eight specific large-scale marijuana enterprises, then aids these large-scale enterprises by eliminating any competition from smaller or related organizations. It then profits off these large enterprises through exorbitant annual permit fees and revenue tax.

4.    The federal Controlled Substance Act ("CSA") preempts City Permit Scheme under impossibility and obstacle preemption. Registering as a dispensary as required by the Oakland Municipal Code will require acts in direct violation of CSA. 21 U.S.C. §801 et seq. In addition, it authorizes individuals to engage in conduct the CSA prohibits.

5.    21 U.S.C §903 provides that State law shall not be excluded on the same subject matter unless there is a "positive conflict" between that provision of this subchapter and that State law so that the "two cannot consistently stand together". 21 U.S.C §903.

6.    Plaintiffs are not operating as a dispensary under federal law. Plaintiffs are operating under a federal exception to possession of marijuana under 21 U.SC. §822(c) as a warehouseman or common or contract carrier ("Warehouseman Exception"). 21 U.S.C. §§885, 822(c).

7.    Because the City Permit Scheme would be in "positive conflict" with the Controlled Substance Act, "such that the two cannot consistently stand together," Defendants' actions against Plaintiffs under the authority of the City Permit Scheme must cease immediately.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this case pursuant to 42 U.S.C. § 1983, 28 U.S.C.

§1331 and the Supremacy Clause in Article VI, Clause 2 of the United States Constitution. A

remedy is sought under the Declaratory Judgment Act, 28 U.S.C. § 2201. "A plaintiff who seeks

injunctive relief from state regulation, on the ground that such regulation is pre-empted by a

federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus

presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to

resolve." *Shaw v. Delta Air Lines*, 463 U.S. 85, 96 n.14 (1983).

9.     Venue is proper in this Court under 28 U.S.C. §§ 1391(e) and 1402(a)(1) because

this action concerns private property located in Oakland, California and actions by the City of

Oakland, both of which are within the jurisdiction of the Northern District of California.

## PARTIES

10.     Plaintiff JOE HEMP'S FIRST HEMP BANK AND DISTRIBUTION

NETWORK (hereinafter referred to as "FIRST HEMP BANK") is a federally recognized

organization with a federal ID number. It is a business that operates under the Warehouseman

Exception, where it "may lawfully possess any controlled substance" as "a common or contract

carrier or warehouseman, or an employee thereof, whose possession of the controlled substance

or list I chemical is in the usual course of his business or employment." 21 U.S.C 822(c)(2).

11.     FIRST HEMP BANK lawfully operates in the state of California under the

Compassionate Use Act of 1996, in order to provide a unique service that allows safe and

affordable access to marijuana that is also lawful under the federal Warehouseman Exception.

California Health & Safety Code § 11362.5; 21 U.SC. §§ 885, 822(c).

12.     Under the same federal ID, FIRST HEMP BANK has two locations in the state of California, city of Oakland, both known as FIRST HEMP BANK AND DISTRIBUTION NETWORK. Both locations have individually issued tax identification numbers to operate as a business in Oakland. The first one was registered in 1999 and still in operation. The second one is an offsite location of the first one and was registered in 2009. This second location is the current location at issue (hereinafter referred to as "LOCATION"). Both locations are in lawful compliance with business codes in the city of Oakland, California law and federal law.

13.     FIRST HEMP BANK recognizes the 18-year battle between the state of California and federal law and have operated its 15-year business in compliance with both laws to avoid the conflict between federal and state law. The organization has paid and continues to pay income tax and Use Tax for services, has secured federal privilege through the use of the U.S. postal services, has secured lawful banking relationship and has the ability to file deductions and receive credit on its federal tax return.  All of these privileges in addition to the issued city and federal tax identification number and certificates are vested property interests.

14.     FIRST HEMP BANK is a warehouseman or common or contract carrier under federal law. FIRST HEMP BANK provides a service. It does not manufacture or sell marijuana. Their service is to provide a location that operates as a bank or a warehouse to safely and lawfully store marihuana under the warehouseman exception under 21 U.S.C. 822(c), which states:

> The following persons shall not be required to register and may lawfully possess any controlled substance or list I chemical under this subchapter: …
> (2) A common or contract carrier or warehouseman, or an employee thereof, whose possession of the controlled substance or list I chemical is in the usual course of his business or employment.

15.     FIRST HEMP BANK is a closed distribution network consisting of members. The members own the controlled substance. As a closed network, FIRST HEMP BANK does not provide storage services to third parties or to the general public. There is no conveyance to third parties. It does not sell marijuana. It does not prescribe medical marijuana to patients nor does it retain a practitioner to prescribe medical marijuana. It does not administer or dispense within the meaning of CSA. FIRST HEMP's activities do not violate CSA's prohibitions because it falls under the Warehouseman Exception.

16.     Plaintiff DAVID CLANCY is a founding member of FIRST HEMP BANK. CLANCY is a named party in the Order by the City of Oakland.

17.     Defendant CITY OF OAKLAND is a subdivision of the State of California located in Alameda County, and is the local governing authority in Oakland. The City enacted the Oakland Municipal Code at issue. The City is entitled to sue and be sued and is constrained by the laws of the United States, including the U.S. Constitution and 42 U.S.C. § 1983.

18.     Defendant GREGORY MINOR is the Assistant to the City Administrator at the City Administrator's Office in the Nuisance Abatement Division of the City of Oakland. Defendant has and continues to take administrative action and other action to shut down, close and deny the Plaintiffs organization, including interference with other business relations and other acts.

19.     Defendants Does 1 through 10 are unknown city, towns, and municipalities chartered in California or counties within California that has taken action or will take action to adversely target Plaintiffs' organization.

**FACTS**

20.     On or around July 26, 2011, the City of Oakland ("City") adopted the City Permit Scheme to authorize the manipulation of Cannabis in the city of Oakland.

21.     Prior to enacting the updated 2011 City Permit Scheme, the U.S. Attorney for the Northern District of California sent a letter to the Oakland City Attorney condemning Oakland's marijuana licensing scheme. The letter states, "The Department is concerned about the Oakland Ordinance's creation of a licensing scheme that permits large-scale industrial marijuana cultivation and manufacturing as it authorizes conduct contrary to federal law and threatens the federal government's efforts to regulate the possession, manufacturing, and trafficking of controlled substances." U.S. Attorney Melinda Haag letter to Oakland City Attorney John A. Russo (February 1, 2011).

22.     The letter specifically warned of prosecution of those who "set up industrial marijuana growing warehouses in Oakland pursuant to licenses issued by the City of Oakland." *Id.*

23.     Despite the specific letter from the US Attorney stating that City would be in violation of CSA, City went ahead and adopted the updated City Permit Scheme. Harborside Health Center is one of City's permittees that renewed its permit.

24.     Soon after in 2012, the U.S. Attorney General filed a civil forfeiture action to shut down Harborside Health Center as warned. This case is ongoing as of the filing of this Amended Complaint. *United States v. Real Property and Improvements Located at 1840 Embarcadero, Oakland, California, No. 3:12-cv-03567-MEJ (N.D. Cal. Filed July 9, 2012)* ("*Harborside*").

*City Permit Scheme: More Conditions*

25.     The City Permit Scheme conditions permit approvals upon more conditions than those that are revealed in the OMC §5.80, 5.81 et seq. The grant of permit is subject to further conditions, which may be subject to revisions or additional conditions without notice. See Exhibit A: City of Oakland's Special Business Permit Issued June 10, 2013.

26.      One of these conditions is the requirement to convey marijuana to third parties who are not members of the closed distribution network. See Exhibit A: Section IV ¶9.

27.     Furthermore, City Permit Scheme does not disclose its predatory permit fees in its entirety. The permit program charges $5,000 to apply for a permit, $60,000 for annual dispensary permit, $211,000 annual cultivation permit, and unknown amounts of inspection fees.

28.     The City informed FIRST HEMP BANK that it is a dispensary under City's definition of a dispensary and therefore must have either applied for a dispensary permit and if approved, pay the city unreasonable fees to maintain this permit or else shut down.

29.     As lawful warehousemen in Oakland since 2009 as described in above paragraphs 10-15, Plaintiffs declined to apply for a permit under the City Permit Scheme.

30.     On October 12, 2015 and after a hearing, the City of Oakland issued an administrative order to sanction and abate Plaintiffs for not applying and obtaining a permit under the City Permit Scheme. As of the filing of this complaint, the defendant MINOR continues to act to cause the eviction or removal of Plaintiffs' lawful organization.

*Conflict and Obstacle to Federal Law*

31.     CSA Title 21 Section 841 makes it illegal to distribute marijuana. The City Permit Scheme requires direct acts in violation of CSA. The City Permit Scheme requires conveyance

of marijuana to third parties who are not members of the closed distribution network. See for example Exhibit A: Section IV Paragraph 9 (requirement that marijuana is sent to nonmember independent laboratory).

32.     CSA Title 21 Section 846 makes it illegal to conspire to commit any of the crimes set forth in the CSA.  The City Permit Scheme authorizes individuals to engage in conduct that the CSA forbids. The City hand selects who they wish to be the recipients of their limited eight permits. Those selected who can afford to pay additional fees and follow other city requirements are then permitted by City to operate in the city. Those who were not sold permits by City will be targeted by City until it is shut down.

33.     City Permit Scheme not only requires and authorizes acts that violate the CSA, City seeks to profit large amounts of money from such violations.

34.     A permit licensing scheme is for regulatory purposes only, instead City is using Permit Scheme to improperly generate revenue. Through City Permit Scheme, City actively 1) selects and authorizes large enterprises and 2) aids these larger enterprises by eliminating any kind of competition from smaller or related organizations, 3) then profits directly from the large enterprises. City admits that it needs the revenue generated by permittees. Complaint in *City of Oakland v. Eric Holder et al.,* C 12–05245 MEJ (Oakland's attempt to stop the forfeiture action in *Harborside*). To obtain the biggest profits, the City Permit Scheme creates the biggest entities possible to violate federal law.

35.     The City Permit Scheme is a regulatory licensing scheme that charges beyond the amount required to regulate non-profit organizations. CA law requires marijuana dispensaries to be nonprofit.  Unlike a tax, the fees of regulatory licenses are limited to the cost of permits and

expenses of police regulation. It is unknown as to why the City would charge regulatory fees in total of 276,000.00 and additional unknown amounts of inspection fees, per annual permit.

36.     The fees for City Permit Scheme are so high that small non-profit organizations would not be able to maintain itself. It essentially monopolizes the community's medical needs and necessarily creates an environment where only large scale enterprises can survive.

37.     On February 3, 2015, in an appellate hearing for *City of Oakland v. Eric Holder*, the appellate judge pointed out a few important facts that 1) Oakland is profiting off illegal drug sales, 2) if the forfeiture action succeeds, any money from sales of marijuana belongs to the federal government and not the City and 3) the City is not innocent as the City knows that the revenue is from prohibited sales of the controlled substances.  Appellate Hearing, *City of Oakland v. Eric Holder et al.,* 13-15391 (February 3, 2015).

38.     In 2011, the Deputy Attorney General issued a memorandum to all United States Attorneys confirming efficient use of federal resources in enforcing the CSA includes targeting large scale enterprises. Deputy Attorney General James M. Cole, memorandum for all U.S. Attorneys (June 29, 2011). In 2013, the Deputy Attorney General issued a follow up memorandum that further narrows the behavior that interferes with federal goals: large scale enterprises in combination with ineffective local regulation to prevent diversion of marijuana. Deputy Attorney General James M. Cole, memorandum for all U.S. Attorneys (August 29, 2013).

39.     The City Permit Scheme does not have an effective operation to prevent diversion of marijuana or profits from marijuana when billions of dollars flow through their gigantic

enterprises. City admits that sales tax from their permittees generate over millions for the City. Complaint in *City of Oakland v. Eric Holder et al.,* C 12–05245 MEJ.

40.     In 2012, the federal government acted to shut down Harborside Health Center largely because it violates the CSA, it is a large scale enterprise and it and the City lacked of ability to prevent diversion in large scale enterprise.

## DECLARATORY RELIEF ALLEGATIONS

41.     Under the Fifth and Fourteenth Amendments to the United States Constitution, Plaintiffs have the right to be free from unconstitutional local laws and to just compensation for takings of their private property. They have a collateral right to be free from unconstitutional City permit requirements without just compensation.

42.     Under 21 U.S.C. §822(c) Warehouseman Exception, Plaintiffs have a right to operate in the course of its business to lawfully possess marijuana as a warehouseman.

43.     Under 21 U.S.C. § 903, City Permit Scheme is in positive conflict with federal law.

44.     There is accordingly a justiciable controversy in this case as to whether the City Permit Scheme has been preempted by federal statute and therefore not enforceable to Plaintiffs.

45.     A declaratory judgment as to whether the City Permit Scheme has been preempted by federal law will clarify whether the Code is enforceable against Plaintiffs.

46.     A declaratory judgment as to the constitutionality and legality of the City Permit Scheme will give the parties relief from the uncertainty and insecurity giving rise to this controversy.

1

**INJUNCTIVE RELIEF ALLEGATIONS**

2

3

47.     Plaintiffs have no adequate remedy at law to address their claims arising from the

4

City Permit Scheme and occurring under the color of state law.

5

48.     Congress has vested district courts with jurisdiction to grant injunctive relief for

6

violations of the Act. Specifically, § 882(a) of the CSA provides in part:

7

8

The district courts of the United States and all courts exercising general
jurisdiction in the territories and possessions of the United States shall have

9

jurisdiction in proceedings in accordance with the Federal Rules of Civil
Procedure to enjoin violations of this subchapter.21 U.S.C. § 882(a).

10

49.     There is a substantial likelihood that the Plaintiffs will succeed on the merits of its

11

claims that the City Permit Scheme is preempted by federal law and that the City violated the

12

13

Fifth and Fourteenth Amendment by requiring the Plaintiffs to surrender property interest

14

without just compensation.

15

50.     The Plaintiffs have suffered and will continue to suffer irreparable harm absent a

16

preliminary and permanent injunction restraining the Defendants from further enforcing the

17

City's final administrative order and City Permit Scheme against them.

18

19

51.     The Plaintiffs injuries outweigh any harm the injunction may cause Defendants.

20

52.     An injunction restraining Defendant from enforcing the City Permit Scheme and

21

administrative order will enhance, not impair, public interest.

22

23

53.     A preliminary injunction is necessary as the Defendants are currently and will

24

continue to act to cause immediate and irreparable harm to Plaintiffs.

25

26

**FIRST CAUSE OF ACTION**

27

28

54.     Plaintiffs reallege and incorporate by references Paragraphs 1 through 38 as if set forth fully herein.

55.     Supremacy Clause in Article VI, Clause 2 of the United States Constitution. Defendant's administrative action arises under an unlawful municipal code occurring under the color of state law. The code is in conflict with federal law and thus preempted.

56.     City Permit Scheme is entirely preempted by federal law and no part of it can be severed. It authorizes and requires violation of federal law.

**SECOND CAUSE OF ACTION**

57.     Plaintiffs reallege and incorporate by references Paragraphs 1 through 38 as if set forth fully herein.

58.     The Fifth Amendment of the U.S. Constitution provides that "No person shall be … deprived of life, liberty, or property, without due process of law …"

59.     The City Permit Scheme is a regulatory licensing scheme that charges beyond the amount required to regulate a non-profit organization.

60.     City is subjecting Plaintiffs to a fine under a code that is unlawful under federal law. Such code should not exist in the first place.

61.     Defendants' actions constitute a taking of property without just compensation in violation of Article 1, Section 19 of the California Constitution and the Fifth and Fourteenth Amendments of the United States Constitution. Money is a constitutional protected property. All the property interest in paragraph 11 and 12 are constitutional protected property.

**THIRD CAUSE OF ACTION**

62.     Plaintiffs reallege and incorporate by references Paragraphs 1 through 38 as if set forth fully herein.

63.     The City forces applicants to the City Permit Scheme to give up their 5th amendment right against self-incrimination.  On the application, applicants must admit to being a dispensary, acknowledge that they are violating federal law so that they may be federally prosecuted, must follow requirements to violate federal law, and furthermore must agree to indemnify the City of Oakland against federal prosecution.

64.     In addition, the City Permit Scheme's record-keeping requirements violates collective members' Fifth Amendment rights against self-incrimination.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter judgment as follows:

A.      A Preliminary Injunction during the pendency of this action and a Permanent Injunction enjoining Defendants from enforcing the existing administrative order, accumulating the $1000.00 fine per day, from arresting or prosecuting Plaintiffs, forfeiting their property, or seeking any civil or administrative action and sanctions or fines against Plaintiffs or otherwise acting, directly or indirectly by contacting third parties, to interfere in the operation of their lawful organization;

B.      A declaratory judgment that the Oakland Municipal Code §5.80, 5.81 is unconstitutional and unenforceable because it has been preempted by the CSA;

C.      A declaratory judgment that the Oakland Municipal Code § 5.80, 5.81 violates the Takings Unconstitutional Conditions doctrine on its face and is therefore invalid and unenforceable;

1

        D.     Award Plaintiffs their reasonable attorneys' fees, cost and expert fees under 42

2

U.S.C. § 1988;

3

        E.     Award Plaintiffs' costs of suit pursuant to Federal Rule of Civil Procedure 54(d);

4

5

and

6

        F.     Grant Plaintiffs any other and further relief as the Court deems just and proper.

7

8

      DATED:  December 29, 2015             Respectfully Submitted,

                                        By:___/s/ Quynh Chen_____

9

                                        Quynh Chen

                                        Attorney for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A



**CITY OF OAKLAND**
**Office of the City Administrator**

---

SPECIAL BUSINESS PERMITS    •    1 Frank H. Ogawa Plaza, 11ᵗʰ Floor    •    Oakland, CA 94612

**PERMIT NUMBER: M13-003**
**DATE ISSUED: June 10, 2013**
**EXPIRES: June 20, 2014**

**OAKLAND ORGANICS**
**705-721 BROADWAY**
**OAKLAND, CA  94612**

**SPECIAL ACTIVITY PERMIT FOR:**      **OAKLAND CANNABIS INSTITUTE, LLC.**
                                         **(Dona Frank)**

**To:**    **OPERATE A MEDICAL CANNABIS DISPENSARY**

**At:**    **705-721 BROADWAY**

**Under the name of:  OAKLAND ORGANICS**

**Conditions of Approval:**      **In accordance with the provisions of existing city ordinances,**
                                 **this permit is issued with the following conditions:**

1.    The permittee shall comply with the attached Conditions of Approval.
2.    The permittee shall comply with the attached City Administrator's Regulations for Cannabis
      Dispensaries and any revisions or additions thereto.

_____
Arturo M. Sanchez, Deputy City Administrator
                    For
Deanna J. Santana, City Administrator

cc:    Office of the Mayor
       City Council
       Deanna J. Santana, City Administrator
       Chief of Police
       Deputy Chief David Downing BFO
       Acting Cpt. Eric Lewis, OPD
       Acting Assistant Fire Marshal Kim Catano, Oakland Fire Department
       Mr. Ray Derania, Building Services, CEDA
       Business License Office, BFA

ADMINISTRATIVE REGULATIONS AND PERFORMANCE STANDARDS FOR OAKLAND
MEDICAL CANNABIS DISPENSARIES

## I. Introduction

Oakland Municipal Code § 5.80.030 requires the City Administrator to establish and amend administrative regulations for the permitting of dispensaries, and also authorizes the City Administrator to set forth standards for operation of medical cannabis dispensaries.

The definitions set forth in Oakland Municipal Code Chapter 5.80 apply to the interpretation and understanding of these Administrative Regulations ("Regulations").

## II. Compliance with State Law, Municipal Code and Regulations

The Dispensary shall meet all of the operating criteria for the dispensing of medical marijuana, incompliance with State law, including California Health and Safety Code Section 11362.7 *et seq.*; the Oakland Municipal Code, and the City Administrator's Regulations for the permitting and operation of medical cannabis dispensaries.

The Dispensary must comply with all applicable state and local laws, policies or regulations, including the Health and Safety Code, the City adopted Building Code, Plumbing Code, Electrical Code, Mechanical Code, Fire Code, and the Americans with Disabilities Act.

The Dispensary must pay the Cannabis Tax as required pursuant to Section 5.04.480 of the Oakland Municipal Code.

The Dispensary must comply with the Conditions of Approval and City Administrator's Administrative Regulations for Cannabis Dispensaries, including any additions or revisions thereto.

Failure to comply with the Conditions of Approval, City Administrator's Administrative Regulations for Cannabis Dispensaries, and all applicable local and state laws or regulations may result in the imposition of fines, and suspension or revocation of the Dispensary permit after an administrative hearing. The Dispensary may also be subject to enforcement through the City's nuisance abatement process and other administrative enforcement mechanisms, civil action, and criminal prosecution.

## III. Permitting

### A. Applications for Permit

The City Administrator shall be responsible for implementing a process for selection of qualified Dispensaries, and may set forth criteria in any request for permit applications standards and requirements to determine a Dispensary's qualifications to meet the City's ordinance, regulations and state law. In addition to the standards set forth in Oakland Municipal Code Chapter 5.80, the Request for Permit Application ("RFPA"), and these Regulations, the City Administrator or his/her designee may consider the history of applicant's operating experience in the City of Oakland during the review of his or her application for Cannabis Dispensary permit or the renewal thereof.

OAKLAND CANNABIS INSTITUTE, LLC, dba OAKLAND ORGANICS M13-003

In applying for a dispensary permit, the Dispensary shall pay the required regulatory fee, permit application fees, and other processing fees annually in advance as mandated in Chapter 5.80 of the Oakland Municipal Code. Dispensary Permits are valid for one (1) year from the date of issuance. Permit fees shall be due in two (2) installments, with the initial installment due in May 1st (prior to issuance of the permit) and balance due by October 31st.

The Dispensary shall comply with any specific, additional administrative regulations, procedures and measures imposed as conditions of approval by the City Administrator to ensure that the operation of the Dispensary is consistent with protection of the health, safety and welfare of the community and will not adversely affect surrounding uses. Additionally, any approved aspects of the Dispensary's Permit application shall be deemed to be incorporated into the Dispensary's Permit; failure to comply with the Business Plan and other aspects of the permit may be grounds for revocation of the Permit.

### B. Renewal of Permits

Dispensary Permits must be renewed annually with the City Administrator's Office. Permit Holders shall contact the City Administrator's Office no later than forty-five (45) days before the expiration of the current permit to begin the renewal process. At that time, the Dispensary shall submit verification of the current Business Tax Certificate, audited financial statements for the previous permit term, and any other requested financial documents or information as required by the Oakland Municipal Code or the Regulations. If the Oakland Dispensary is part of a multi-dispensary business or is included as part of a non-dispensary business for tax reporting purposes, the audited financial statements must be for the Oakland dispensary part of the business.

As part of the annual renewal process the Dispensary shall be inspected by the Building Inspector, Fire Marshall, or their designees. Violations of the Oakland Municipal Code shall be corrected within a reasonable time, as determined by the Building Inspector, Fire Marshal or his/her designee. The Dispensary shall provide proof to the City Administrator's Office that there are no outstanding violations of the Oakland Municipal Code.

### C. Revocation

Suspensions and revocations of permits shall follow the procedures set forth in Oakland Municipal Code Section 5.80.080.

## IV. Performance Standards

A Dispensary shall operate in conformance with the following standards, and such standards shall be deemed to be conditions of approval on the Dispensary's Permit, to ensure that its operation is in compliance with California law, the Guidelines, and Municipal Code, and to mitigate any potential adverse impacts of the Dispensary.

### Operations at the Dispensary

1.      The Dispensary shall provide the City Administrator, the Chief of Police, and all neighbors located within fifty (50) feet of the premises with the name, phone number, and facsimile number of an on-site community relations staff person to whom one can provide notice if there are operating

OAKLAND CANNABIS INSTITUTE, LLC, dba OAKLAND ORGANICS M13-003

problems associated with the Dispensary. The Dispensary shall make a good faith effort to encourage neighbors to call the community relations staff person to try to solve operating problems, if any, before any calls or complaints are made to the City Administrator or Police Department.

2.      The Dispensary shall only provide, distribute, dispense, give or transmit medical marijuana to qualified patients or primary caregivers.

3.      With the exception of security guards only qualified patients and caregivers shall be allowed inside of the Dispensary, except that the City may approve short term limited duration visits from third parties with appropriate supervision and oversight from security and dispensary personnel. The City must be notified in advance and be informed as to who and why the third party guests will be present and the measures that will be taken to prevent diversion. Examples of 3rd party guests who may be approved include contractors hired for verifiable construction or other work and government officials.

4.      The Dispensary shall not profit from the sale or distribution of marijuana. Any monetary reimbursement that members provide to the dispensary should only be an amount necessary to cover overhead cost and operating expenses, including legal and operational expenses required as a result of the normal course of business. Retail sales of medical marijuana that violate state law are prohibited.

5.      The Dispensary may only dispense, store, or transport marijuana in aggregate amounts tied to its membership numbers. The dispensary may possess no more than eight (8) ounces of dried marijuana per qualified patient or caregiver, and maintain no more than six (6) mature and twelve (12) immature marijuana plants per qualified patient. However, if a qualified patient or primary caregiver has a doctor's recommendation that the above quantity does not meet the qualified patient's needs, the qualified patient or primary caregiver may possess an amount of marijuana consistent with the patient's needs. For purposes of determining the quantity of marijuana, only the dried mature processed flowers of female cannabis plants or the plants conversion shall be considered.

6.      The maximum operating hours for the Dispensary shall be as follows: 7:01 am to 7:59 pm daily. The Dispensary is prohibited from operating between the hours of 8:00 p.m. and 7:00 a.m. the next ensuing day, except that patients who have entered the premises prior to closing time may complete their transactions and must be escorted out of premises immediately upon completion of transaction.

7.      Dispensaries are encouraged to disclose the percentage level of delta-9 (trans) tetrahydrocannabinol, cannabidiol, and cannabinol in medical cannabis to qualified patients before providing medical cannabis.

8.      Dispensaries shall follow the direction of the City Administrator or his/her designee regarding any medical cannabis found to be non-compliant with testing standards. These instructions may extend to any medical cannabis found to be unsafe on the basis of such testing results, or to the Dispensary's operations and practices generally.

9.      Representative samples of medical marijuana distributed by the collective shall be analyzed by an independent laboratory to ensure it is free of harmful contaminants regulated by local, state or federal regulatory statutory standards. Any medical marijuana from which the representative sample

OAKLAND CANNABIS INSTITUTE, LLC, dba OAKLAND ORGANICS M13-003

tested positive for a harmful contaminant at a level which exceeds the local, state or federal regulatory or statutory standards shall be destroyed forthwith.

10.    Any medical marijuana provided to collective members shall be properly labeled in strict compliance with state and local laws, regulations and policies.

11.    The Dispensary shall not allow cannabis to be smoked, ingested or otherwise consumed on the premises.  The term premises includes the actual building, as well as any accessory structures, parking areas, or other immediately surrounding areas.

12.    The Dispensary shall not hold or maintain a license from the State Department of Alcoholic Beverage Control to sell alcoholic beverages, or operate a business that sells alcoholic beverages.

13.    The Dispensary shall post a copy of the Business Tax Certificate issued by the Business Tax Office and a copy of the Cannabis Dispensary Permit issued by the City Administrator's Office in a conspicuous place on the premises.

14.    Dispensaries that manufacture edible cannabis products must do so in compliance with all state and county law including health department regulations.

15.    Dispensaries that manufacture edible medical marijuana products, including but not limited to drinks, infused water, cookies, candy or brownies, shall manufacture the edible products for the sole consumption by qualified patient members in compliance with all applicable state and local laws, including any requirements of the Department of Health.

16.    All employees responsible for the handling, processing, dispensing, providing and/or cultivation of marijuana must be members of the Dispensary. Prior to employment, Executive, Board Member, and Manager members must have a Live Scan background check conducted.  All other employee members must have a background check (similar to a live scan background check). The background check must be conducted by reputable third party with experience in conducting the appropriate background check, results of which will be maintained by the Dispensary and available for inspection by the city upon request for all employees.   The purpose is to determine whether the employee has been convicted or plead guilty or *nolo contendre* to the following criminal offenses, or their equivalent if arising out of state:

    a) Health and Safety Code Sections 11350 *et al* (pertaining to controlled
       substances, with the exception of marijuana related offenses)
    b) Penal Code Section 187 (homicide)
    c) Penal Code Section 207 (kidnapping)
    d) Penal Code Section 211 (robbery)
    e) Penal Code Sections 240-248 (assault & battery)
    f) Penal Code Section 261 (rape)
    g) Penal Code Section 314 (indecent exposure)
    h) Penal Code Section 450 (arson)
    i) Penal Code Sections 458-464 (burglary)
    j) Penal Code Sections 470-483.5 (forgery)
    k) Penal Code Sections 484-502.9 (larceny)
    l) Penal Code Sections 503-515 (embezzlement)

OAKLAND CANNABIS INSTITUTE, LLC, dba OAKLAND ORGANICS M13-003

The Executive, Board Member, and Manager employees must contact the City Administrator for information related to the processing and cost of the fingerprinting, and any costs must be paid for in advance by the employee applicant. The background checks shall review the last five (5) years of the employee's criminal history. The results of the background checks shall be reported to the City Administrator's Office no later than 30 days following hire of the employee, unless the City Administrator grants an extension of time. If the background investigation determines the employee has been convicted of one of the above offenses, the Dispensary shall no longer employ the member as an employee.

### Records

17.     The Dispensary shall maintain records of its members using only the State of California Medical Marijuana Identification Card number issued by the county or the County's designee, pursuant to California Health and Safety Code Section 11362.7 *et seq.*, or a copy of the written recommendation, as a protection of the confidentiality of the cardholders. The Dispensary shall track when Members' medical marijuana recommendation and/or identification cards expire and enforce conditions of membership by excluding members whose identification card or recommendation are invalid or have expired. Additionally, the Dispensary shall exclude members who are caught diverting marijuana for non-medical use. All membership records shall be available for inspection by the City or the City's designee given 24 hours notice.

18.     The Dispensary shall, by using the patient or caregiver's identification number keep an accurate account of the number of members that visit the Dispensary each month, and also for the entire permit year.

19.     Within thirty (30) days of the end of the calendar quarter, the Dispensary shall provide the City Administrator count of the total number of members of the Dispensary, the number of Dispensary visits during the previous calendar quarter.

20.     Within thirty (30) days of the end of the calendar quarter, the Dispensary shall provide the City Administrator a listing of the medical marijuana products for sale during the previous calendar quarter, the prices of such products, and the end of quarter quantity on hand, listed in the applicable units, for each product.

21.     The Dispensary shall keep accurate records, follow accepted cash handling practices and maintain a general ledger of cash transactions. Additionally, a Dispensary shall maintain records of all members' contribution of labor or other resources made to the Dispensary.

22.     The Dispensary shall allow the City Administrator to access the books, records, accounts and all data relevant to its operations for purposes of conducting an audit or examination to determine compliance with the Municipal Code, the Regulations and applicable laws. Books, records, accounts and all relevant data shall be produced no later than twenty-four (24) hours after receipt of the City Administrator's request.

23.     The Dispensary shall maintain a log of patient complaints and shall make the log available to the City Administrator upon request. The log shall contain at a minimum the date of the complaint, the complaining patient's identification number or reference to his/her written recommendation, the nature of the complaint, and the action taken by the Dispensary to address the complaint.

OAKLAND CANNABIS INSTITUTE, LLC, dba OAKLAND ORGANICS M13-003

### Facilities

24.   The Dispensary must be located six hundred feet (600') from public or private school, public library, youth center (serving youth eighteen (18) and under), parks and recreation facilities, residential zone or another dispensary.

25.   The Dispensary shall not permit any breach of peace inside of the dispensary or any disturbance of public order or decorum by any tumultuous, riotous or disorderly conduct.

26.   The Dispensary shall be designed with sufficient sound absorbing insulation so that the noise generated inside the Dispensary is not audible on the premises, beyond that of normal commercial offices, or public rights-of-way, or any other building or other separate unit within the same building as the Dispensary.

27.   The Dispensary shall be designed to provide sufficient odor absorbing ventilation and exhaust system so that any odor generated inside the Dispensary is not detected outside the building, on adjacent properties or public rights-of-way, or within any other unit located within the same building as the Dispensary, if the use only occupies a portion of a building.

28.   The dispensary shall provide litter removal services twice (2) each operating day on and in front of the premises and, if necessary, on public sidewalks within one hundred feet (100') of the Dispensary.

### Security

29.   Security cameras shall be installed and maintained in good condition, and the camera and recording system must be of adequate quality, color rendition and resolution to allow the identification of an individual.  The cameras shall be in use 24 hours a day, 7 days per week, and shall cover the marijuana dispensing areas, storage areas, all doors and windows to the Dispensary, parking areas and other areas as determined by the Chief of Police.  The recordings shall be maintained at the dispensary property for a period of thirty (30) days.

30.   The Dispensary shall be alarmed with a centrally-monitored fire and burglar alarm system, and monitored by an alarm company properly licensed by the State of California Department of Consumer Affairs Bureau of Security and Investigative Services in accordance with California Business & Professions Code § 7590 *et seq.* and whose agents are properly licensed and registered under applicable law.

31.   During Business Hours, the Dispensary shall provide a minimum of two (2) security guards duly licensed by the State of California, Department of Consumer Affairs.  Each security guard shall possess a "Security Guard Card" at all times.

32.   Among other things, Security guards shall be responsible for ensuring compliance with Chapter 8.30 of the Oakland Municipal Code which prohibits smoking within twenty-five feet (25') of any building entrance, exit, window and air intake vent of service buildings.

33.   The Dispensary shall direct its security guards to monitor the outside of the premises for loitering and unlawful sale of medical marijuana by members.  Further those security persons shall

OAKLAND CANNABIS INSTITUTE, LLC, dba OAKLAND ORGANICS M13-003

be directed to report to the Dispensary all unlawful sales of medical marijuana by members. The Dispensary shall immediately cease providing medical cannabis to the reported member, and make a report within twenty-four (24) hours to Alameda County Health Department or the doctor that issued the medical marijuana recommendation for the member. If the patient is cleared by county health or its agent, the dispensary may resume the providing medical marijuana to the patient and caregiver. The dispensary shall keep a record of all incidents where members unlawfully provide marijuana to non-members. Additionally, the dispensary shall inform patients and caregivers about this condition and remind them that it is unlawful for them to sell medical cannabis.

34.    Windows and roof hatches at the property shall be secured so as to prevent unauthorized entry and also equipped with latches that may be released quickly from the inside to allow exit in the event of an emergency.

35.    The Dispensary shall maintain adequate exterior lighting in the parking areas to help provide safety for qualified patients, primary caregivers, and employees.

**Signage**

36.    That exterior signage for the dispensary shall be limited to one wall sign not to exceed ten (10) square feet in area, and one (1) identifying sign not to exceed two (2) square feet in area. Such signs shall not be directly illuminated.

37.    The dispensary shall, within sixty (60) days of the issuance of permit, post, and thereafter maintain signs inside the Dispensary where they may be easily read by members. Each sign shall be white with black lettering, and shall comply with the following regulations regarding text, size and content:

Sign 1:  Font size at least 1 inch; Overall size at least 18" by 33"

## PATIENT NOTICE

1.    YOU HAVE THE RIGHT TO HAVE YOUR PRODUCT REWEIGHED AND SUPPLEMENTED IF IT IS UNDER THE STATED WEIGHT AT THE TIME OF PURCHASE.

2.    IF YOU DO NOT HAVE A VALID STATE OF CALIFORNIA IDENTIFICATION CARD ISSUED BY ALAMEDA COUNTY HEALTH DEPARTMENT OR A VALID PATIENT ID CENTER CARD, THIS DISPENSARY MUST CONFIRM YOUR MEDICAL NEED FOR CANNABIS. IF YOU HAVE A VALID IDENTIFICATION CARD, YOU SHOULD NOT BE ASKED FOR ADDITIONAL INFORMATION.

Sign 2: Font size at least 1 inch

TO REGISTER COMPLAINTS OR COMPLIMENTS ABOUT THIS DISPENSARY, CONTACT: THE CITY OF OAKLAND 510-238-7542

Sign 3: Font size at least 1 inch

OAKLAND CANNABIS INSTITUTE, LLC, dba OAKLAND ORGANICS M13-003

THE DIVERSION OF CANNABIS FOR NONMEDICAL PURPOSES IS A VIOLATION OF STATE LAW.

Sign 4: Font size at least 1 inch

THE USE OF CANNABIS MAY IMPAIR A PERSON'S ABILITY TO DRIVE A MOTOR VEHICLE OR OPERATE HEAVY MACHINERY.

Sign 5: Font size at least 1 inch

LOITERING AT THE LOCATION OF A MEDICAL CANNABIS DISPENSARY FOR AN ILLEGAL PURPOSE IS PROHIBITED BY CALIFORNIA PENAL CODE SECTION 647(h).

Sign 6: Font size at least 1 inch

THIS MEDICAL CANNABIS DISPENSARY HAS RECEIVED A PERMIT TO OPERATE FROM THE CITY OF OAKLAND

## V. Effective Date of Regulations and Changes

Any amendments to the regulations shall take effect immediately, and compliance with current regulations shall be required for all new permit applicants.

All dispensaries impacted by a change in the Regulations, including but not limited to, a change in the existing regulations or the addition of a new regulation, shall comply with the changed or new regulation within sixty (60) days of the effective date of the regulation, unless a longer time is approved in advance in writing by the City Administrator.

*AS YOU KNOW, THE CULTIVATION, POSSESSION, DISTRIBUTION AND SALE OF ANY TYPE OF CANNABIS, INCLUDING MEDICAL CANNABIS, IS PROHIBITED UNDER FEDERAL LAW. FURTHER, THE CALIFORNIA SUPREME COURT IS CURRENTLY REVIEWING A CITY'S ABILITY TO REGULATE MEDICAL CANNABIS, WHICH COULD IMPACT THIS PERMIT DEPENDING ON THE OUTCOME OF THE COURT'S REVIEW.*

*A DISPENSARY PERMIT ISSUED BY THE CITY OF OAKLAND DOES NOT PROVIDE ANY IMMUNITIES OR DEFENSES TO STATE AND FEDERAL PROSECUTION OR ENFORCEMENT ACTIONS AGAINST DISPENSARY PERMITTEES, THEIR CULTIVATORS, LANDLORDS OR OTHER PARTIES INVOLVED IN MEDICAL CANNABIS ACTIVITY. AS A RESULT, THE PERMIT SHOULD NOT BE RELIED UPON AS PROVIDING ANY IMMUNITIES OR DEFENSES FROM SUCH PROSECUTION OR ENFORCEMENT ACTION.*

*The permittee agrees to indemnify and save harmless the City of Oakland, its officers, agents, employees and volunteers, and each of them, from any suits, claims, or actions brought by an person or persons, corporations, government agencies or other entities on account of any activities associated with this permit such as but not limited to medical cannabis distribution, cultivation or transportation.*

OAKLAND CANNABIS INSTITUTE, LLC, dba OAKLAND ORGANICS M13-003

Permittee

Date: 6/10/13

Arturo M. Sanchez,
Deputy City Administrator

Date: 6-10-13

OAKLAND CANNABIS INSTITUTE, LLC, dba OAKLAND ORGANICS M13-003