BARBARA J. PARKER, City Attorney, SBN 069722
OTIS McGEE, JR., Chief Assistant City Atty., SBN 071885
JAMES F. HODGKINS, Senior Deputy City Atty., SBN 142561
JAMILAH A. JEFFERSON, Senior Deputy City Atty., SBN 219027
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California 94612
Phone: (510) 238-7686, Fax: (510) 238-6500
Email: jjefferson@oaklandcityattorney.org
X04202:1837549

Attorneys for Defendants
CITY OF OAKLAND and
GREGORY MINOR

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JOE HEMP'S FIRST HEMP BANK AND DISTRIBUTION NETWORK, and DAVID CLANCY

Plaintiffs,

v.

CITY OF OAKLAND, CALIFORNIA, GREGORY MINOR, and DOES 1 through 10,

Defendants.

Case No. C15-05053 A

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS UNDER FRCP 12(b)(1) and (6)**

Date: January 28, 2016
Time: 8:00 a.m.
Location: Courtroom 8, 19th Floor

The Honorable William Alsup

**TABLE OF CONTENTS**

**Page No.(s)**

I. INTRODUCTION....5

II. LEGAL ARGUMENT....6

A. The City's ordinance does not "affirmatively authorize" permit holders to violate the CSA....6

B. The City's ordinance does not require permit holders to violate the CSA....10

1. Making "samples" available for analysis by independent laboratories is not "distribution" for purposes of violating the CSA....10

2. Neither the ordinance nor its accompanying regulations "require" permit holders to use the income they derive in any particular manner....12

C. The City's ordinance is not an obstacle to the full purpose and objectives of the CSA....13

D. The Fifth Amendment "takings" claim is premature and, therefore, there is no underlying constitutional violation for a 42 U.S.C. § 1983 claim....14

IV. CONCLUSION....16

## TABLE OF AUTHORITIES

**Page No.(s)**

### UNITED STATES CONSTITUTION

Fifth Amendment……………………………………………………………………...15

### FEDERAL CASES

*Boyle v. United Techs. Corp.*,
487 U.S. 500 (1988)……………………………………………………………….13

*Clemes v. Del Norte Cnty. Unified Sch. Dist.*,
843 F. Supp. 583 (N.D. Cal. 1994)……………………………………….......................15

*Colony Cove Props., LLC v. City of Carson*,
640 F.3D 948 (9th Cir. 2011)……………………………………………………………….15

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000)…………………………………………………….……………………6

*Kokkonen, Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994)……………………………………………………………………..14

*Williamson Cnty.Reg'l Planning Comm'n. v. Hamilton Bank of Johnson City*,
473 U.S. 172 (1985)…………………………………………………….......................15

*United States v. Arizona*,
641 F.3d 339 (9th Cir. 2011)………………………………………………………6, 10, 13

### FEDERAL STATUTES

21 U.S.C. § 801……………………......……..…………………………………………........13

21 U.S.C. § 802……………………......……..…………………………………………........11

21 U.S.C. § 903……..……………..……..……………………………………………………10

42 U.S.C. § 1983…..……………….……..……………………………………………………...14

**CALIFORNIA CASES**

*City of Garden Grove v. Superior Court*, 157 Cal. App. 4th 355 (Cal. Ct. App. 2007)…..……………………………………………....9

*City of Riverside v. Inland Empire Patients Health and Wellness Ctr.*, 56 Cal. 4th 729 (Cal. 2013)……….....……………………………………….....................8

*Cnty. of San Diego v. San Diego NORML*, 165 Cal. App. 4th 798 (Cal. Ct. App. 2008)…………………………………………7, 8, 9, 12, 13

*McGill v. Regents of Univ. of Cal.*, 44 Cal. App. 4th 1776 (Cal. Ct. App. 1996)……………………………………………………. 15

*Pack v. Superior Court*, 132 Cal. Rptr. 3d 633 (Cal. Ct. App. 2011)…………………………………………………...11

*Qualified Patients Ass'n v. City of Anaheim*, 187 Cal. App. 4th 734 (Cal. Ct. App. 2010)……………………………………………7, 8, 11, 12

**CALIFORNIA STATUTES**

Cal. Code Civ. Proc. § 1094.5..………………………………………………………..............15

Cal. Health & Safety Code § 11362.83………………………………………………………..12

**OAKLAND MUNICIPAL CODE**

Oakland Municipal Code § 5.80…………..……………………………………………...7, 14

## I. INTRODUCTION

Defendants City of Oakland ("City") and Gregory Minor (collectively, "Defendants") maintain that the City's marijuana ordinance is not preempted by federal law, there is no federal question at issue and, thus, this Court lacks jurisdiction over Plaintiff Joe Hemp's First Hemp Bank and Distribution Network's and David Clancy's ("Plaintiffs") lawsuit. In response to Defendants' motion to dismiss, however, Plaintiffs argue that the City's marijuana ordinance (1) "affirmatively authorizes" Controlled Substances Act ("CSA") violations, (2) requires Plaintiffs to violate the CSA by "distributing" to third parties and using income derived from "illegal sales," and (3) is an obstacle to the full purpose and objectives of the CSA.

The City's ordinance does not "affirmatively authorize" permit holders to violate the CSA. The City's definition of "dispensary" encompasses activities such as, "storing," marijuana as Plaintiffs claim they do. If Plaintiffs' "storage" does not violate the CSA, paying fees and taxes to the City under its ordinance for operating the "storage" within the City of Oakland does not turn Plaintiffs' otherwise lawful activity into a crime. As stated in Defendants' motion to dismiss, it is possible for Plaintiffs to be a "warehouse" under federal law and, *at the same time*, meet the definition of a "dispensary" under the City's ordinance and be subject to its provisions. A mere *label* from the City using the *City's definition* does not turn Plaintiffs' otherwise lawful "storage" facility into a federally prohibited facility.

The City's regulatory scheme includes "testing" by authorized laboratories. However, allowing laboratories to test marijuana is not "distribution" in the sense prohibited under the CSA any more than a pharmacy turning over samples to a government laboratory is "distribution." The ordinance does not *require* Plaintiffs to "deliver" samples to laboratories and, thus, it is not mandating "distribution" as prohibited activity is defined in the CSA. Plaintiffs cite to non-binding case law in support of their premise that the City's ordinance requires "distribution." Furthermore, neither the ordinance nor the accompanying regulations "require" permit holders to use "income" derived from their business in any particular manner. Plaintiffs' assertion that the ordinance is an "obstacle" to the

purpose of the CSA because income gained from "illegal sales" is used to pay "exorbitant" fees is merely opinion. Case law supports the conclusion that the City's ordinance does not frustrate the purpose of the CSA.

Finally, to the extent Plaintiffs argue that they properly allege a 42 U.S.C. § 1983 claim, an underlying constitutional violation is required. The only constitutional violation alleged is under the Fifth Amendment. However, a Fifth Amendment "takings" claim is premature because Plaintiffs have not availed themselves of the remedies available in state court. Plaintiffs appear to concede that they have not exhausted the state court remedies available to challenge the underlying administrative decision imposing fines and penalties for continuing to operate their facility. Until Plaintiffs exhaust these remedies through a petition for writ of mandate, they cannot establish that they have been denied "just compensation" – a necessary requirement for maintaining a Fifth Amendment "takings" claim and the basis for their underlying constitutional violation.

For these reasons, Plaintiffs' claims fail, this Court lacks jurisdiction, and the Court must dismiss the case.

## II.   LEGAL ARGUMENT

### A. The City's ordinance does not "affirmatively authorize" permit holders to violate the CSA.

The parties appear to agree on the fundamental principles of federal preemption and the Supremacy Clause. *United States v. Arizona*, 641 F.3d 339, 344 (9th Cir. 2011) (citing *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000)). We disagree, however, on the end result of the City's ordinance. Plaintiffs concede that ordinances that merely "decriminalize" certain conduct are not preempted by the CSA. Pls.' Response to Defs.' Motion to Dismiss ("Pls.' Response") 10:5-16. On the other hand, ordinances that "affirmatively authorize" violating the CSA are preempted. Pls.' Response 10:5-23. Plaintiffs argue that the City's marijuana scheme goes beyond mere decriminalization and, instead, "authorizes" conduct that is illegal under federal law. Defendants disagree. Pls.' Response 10:24-11:7.

The definition of "dispensary" in section 5.80.010(C) is:

> "Cannabis dispensary" or "Dispensary" shall mean a collective or cooperative that distributes, dispenses, **stores**, exchanges, processes, delivers, **makes available**, transmits and/or gives away marijuana in the City for medicinal purposes to four or more qualified patients and/or primary caregivers pursuant to California Health and Safety Code Sections 11362.5, 11362.7 et seq.

O.M.C. § 5.80.010(C) (emphasis added). Plaintiffs allege that they "store," or make "available" or "accessible" medical marijuana. First Amended Compl. ("FAC") ¶¶ 6, 10, 11, 14-15. Based on their own allegations, they fall within the purview of the City's ordinance. The City's ordinance does not "authorize" Plaintiffs to engage in federally sanctioned conduct; instead, it declines to punish those who may, arguably, decide to "violate" federal law by organizing marijuana collectives but who also willingly comply with the City's regulations. Permit holders are not "paying" to violate the CSA as Plaintiffs suggest. Permit applicants actively seek to "distribute" (or store) marijuana in some manner – the City's permit process is simply its manner to regulate (and not criminalize) conduct within its borders. The City's ordinance is legislation that it is fully authorized to implement.

Although Plaintiffs attempt to distinguish case law that supports Defendants' position against preemption, they must, nonetheless, acknowledge that courts have declined to find that state and local ordinances regulating medical marijuana are preempted by the CSA. In two cases, California's Fourth Appellate District found that statutes regulating medicinal marijuana were *not* preempted by the CSA. In *County of San Diego*, the court considered California's Medical Marijuana Program ("MMP"), an identification card program used to issue cards to patients who were qualified to use medical marijuana. *Cnty. of San Diego v. San Diego NORML*, 165 Cal. App. 4th 798, 810-11 (Cal. Ct. App. 2008). The Court found that neither issuing identification cards nor the process used to issue the identification cards was preempted by federal law. *Id.* at 825-26. In *Qualified Patients Ass'n*, the court held that neither California's MMP nor its Compassionate Use Act ("CUA") "override" federal law by "decriminalizing" certain conduct related to medical marijuana. *Qualified Patients Ass'n v. City of Anaheim*, 187 Cal. App. 4th 734, 757 (Cal. Ct. App. 2010).

In both cases, the Fourth Appellate District analyzed the underlying provisions in the statute or ordinance at issue. The court considered what each program attempted to regulate or govern. In *County of San Diego*, the identification card program was voluntary – however, counties were required to provide and process applications, verify information, approve applications, and issue cards. *Cnty. of San Diego,* 165 Cal. App. 4th at 810-11. This conduct did not violate any conduct proscribed in the CSA. In *Qualified Patients Ass'n*, the court determined that, while it was true that California and the federal government have conflicting views of the potential health benefits of marijuana, neither the CUA nor the MMPA requires anything that the CSA forbids. *Qualified Patients Ass'n,* 187 Cal. App. 4th at 759. Further, the court found that the CSA does not direct local governments to exercise their regulatory, licensing, zoning, or other power in any particular way. *Id.*

Likewise, the City's ordinance does not "authorize" conduct that the CSA forbids. Medical marijuana users in Oakland are not subject to prosecution for such use or possession of that which they use. Medical marijuana users may voluntarily come together to form a collective of four or more medicinal users. Once medical users voluntarily make that decision, they must comply with the City's ordinance – as it is with the City's legislative authority to regulate using its "zoning" and "business licensing" powers within its boundaries. *See, e.g., City of Riverside v. Inland Empire Patients Health and Wellness Ctr.*, 56 Cal. 4th 729, 752-53 (Cal. 2013) (upholding a ban of medical cannabis dispensaries within the city and finding a local ordinance that made the use of property for certain (drug related) activity a local nuisance was not preempted by the CUA or MMP). To that end, the City's ordinance complies with state law and merely "decriminalizes" conduct associated with operating a collective. Accordingly, to the extent this Court agrees with the reasoning in *County of San Diego* and *Qualified Patients Ass'n* and finds the CUA and MMP – statutes pursuant to which Plaintiffs allege they are operating – are not preempted by federal law, the City's ordinance designed to comply with state law is, similarly, not preempted by federal law. FAC ¶ 11.

Moreover, the administrative regulations for the City's medical cannabis dispensaries

explicitly state that distributing cannabis is prohibited by federal law and a dispensary permit does not provide immunities or defenses to state or federal prosecution. The administrative regulations state in part:

> As you know, the cultivation, possession, distribution and sale of any type of cannabis, including medical cannabis, **is prohibited under federal law** . . . **A dispensary permit issued by the City of Oakland does not provide any immunities or defenses to state and federal prosecution** or enforcement actions against dispensary permittees, their cultivators, landlords or other parties involved in medical cannabis activity . . . .

FAC Ex. A, Administrative Regulations and Performance Standards for Oakland Medical Cannabis Dispensaries, section V (emphasis added). There is no illusion that the City's permit does not provide a "safe harbor" from federal prosecution. The ordinance is not designed to ensure that permit holders avoid federal prosecution; Plaintiffs as well as other "dispensaries" *operate* their facilities at risk of federal scrutiny.

As in *County of San Diego*, the City's ordinance does not purport to make legal any conduct that is *prohibited* in the CSA. Instead, the City declines to prosecute medical users and further declines to prosecute those who gather to form a collective – so long as they comply with the City's regulations. *Cnty. of San Diego*, 165 Cal. App. 4th at 826 (finding that, because the CSA did not "compel the states to impose criminal penalties for marijuana possession," the requirement that counties issue cards, for example, did not positively conflict with the CSA."); *see, e.g.*, *City of Garden Grove v. Superior Court*, 157 Cal. App. 4th 355, 384-85 (Cal. Ct. App. 2007) (finding no preemption of CUA or MMP allowing right to return of seized and impounded marijuana to a qualified user where state statutory scheme limits state prosecution for medical marijuana possession but does not limit enforcement of the federal drug laws). Moreover, unlike Plaintiffs argue, neither the CSA nor the CUA or MMP, dictate the number of permits a City may issue or the manner in which the City selects a permit holder.

**B. The City's ordinance does not require permit holders to violate the CSA.**

Plaintiffs appear to concede that it is not "impossible" for them to register as a "warehouse" under federal law and also come within the definition of and be required to comply with the City's ordinance for a "dispensary." Instead, Plaintiffs are now arguing that provisions of the City's ordinance directly conflict with the CSA; compliance with the City's ordinance violates federal law. Pls.' Response 13:16-14:9. Title 21 of the United States Code section 903 states in part:

> No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates . . . to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, **unless there is a *positive conflict* between that provision** . . . and that State law . . . .

21 U.S.C. § 903 (emphasis added). A "positive conflict" exists where there is "impossibility" or an "obstacle." Impossibility preemption exists where it is "impossible for a private party to comply with both state and federal law." *Arizona*, 641 F.3d at 345.

Plaintiffs argue that there is a "positive conflict" between the City's ordinance and the CSA because the ordinance *requires* permit holders to violate the law by "distributing" marijuana to third parties and use income from "illegal sales" to pay permit fees. Pls.' Response 13:16-14:9. The City's ordinance, however, does not *require* permit holders to violate the law. Independent laboratories analyzing medical marijuana samples is not "distribution" under the CSA. Further, the City's ordinance states that "dispensaries" shall not "profit" from the sale of distribution of marijuana and the regulations are void of any mandate to use income from "illegal sales" to pay permit fees.

**1. Making "samples" available for analysis by independent laboratories is not "distribution" for purposes of violating the CSA.**

Plaintiffs argue that the City's regulations requiring permit holders to allow independent laboratories to analyze marijuana "samples" is a direct violation of the CSA prohibition on "distribution." FAC ¶ 26; Pls.' Response 13:16-14:9. The regulations that accompany the City's ordinance state:

> Representative samples of medical marijuana distributed by the collective **shall be analyzed by an independent laboratory to ensure it is free of harmful contaminants** regulated by local, state or federal regulatory statutory standards. Any medical marijuana from which the representative sample tested positive for a harmful contaminant at a level which exceeds the local, state or federal regulatory or statutory standards shall be destroyed forthwith.

FAC Ex. A, Administrative Regulations and Performance Standards for Oakland Medical Cannabis Dispensaries, section IV, para. 9 (emphasis added). The City's regulations are designed to protect the health and safety of medical marijuana users who obtain marijuana from a City permitted "dispensary." Although Plaintiffs label the City's requirement that laboratories analyze marijuana as "distribution," the regulations do not require permit holders to "deliver" marijuana to laboratories. *See, e.g.*, 21 U.S.C. 802(11). Even if the regulations did require "delivery," such action – designed to protect the health and safety of people – is inconsistent with the spirt and purpose behind *prohibiting* distribution in the CSA.

Plaintiffs cite to *Pack*, a non-binding case, to support its assertion that laboratories analyzing marijuana from "dispensaries" is equivalent to the "distribution" prohibited under the CSA. *Pack v. Superior Court*, 132 Cal. Rptr. 3d 633 (2011), *rev. granted* and opinion *superseded sub nom*. *Pack v. S.C.*, 268 P.3d 1063 (Cal. Ct. App. 2012). In *Pack*, the California Court of Appeal considered a dispensary regulatory scheme in the City of Long Beach. Ultimately, the Court found aspects of the City of Long Beach's ordinance – laboratories analyzing marijuana samples – were preempted by federal law. *Id.* at 650-51. However, and more importantly, the Court noted that there was no binding or controlling authority on this issue. *Id.* at 638, 648 ("The question presented by this case is whether the City's ordinance, which permits and regulates medical marijuana collectives rather than merely decriminalizing specific acts, is preempted by federal law. In this case of first impression, we conclude that, to the extent it permits collectives, it is.")

As discussed above, another district in California – division one and four in the Fourth District – has considered similar preemption issues in the realm of medical marijuana and found that the statutes at issue were *not* preempted by federal law. *See, e.g., Qualified Patients Ass'n*, 187 Cal.

App. 4th at 757-63 (stating that neither California's MMP nor its CUA "override" federal law by "decriminalizing" certain conduct related to medical marijuana and, therefore, pose no obstacle to federal enforcement of federal law and are not preempted by federal law); *Cnty. of San Diego*, 165 Cal. App. 4th at 825-28 (finding a card identification program for patients qualified to use medicinal marijuana not preempted by federal law because the entity that issued the cards did not engage in conduct banned by the CSA and the CSA did not compel the states to impose criminal penalties for marijuana possession); *see also* Cal. Health & Safety Code § 11362.83 (stating, "nothing in this article shall prevent a city . . . from adopting and enforcing . . . local ordinances that regulate the location, operation, or establishment of a medical marijuana cooperative or collective."). This Court is not bound by the court's reasoning in *Pack*. Accordingly, Defendants urge the Court to consider the reasoning and principles espoused in *Qualified Patients Ass'n* and *County of San Diego* to determine that the City's ordinance *is not* in "positive conflict" with the CSA.

**2. Neither the ordinance nor its accompanying regulations "require" permit holders to use the income they derive in any particular manner.**

Plaintiffs argue that the City's ordinance "requires" permit holders to use income derived from "illegal sales" to pay the City's "exorbitant fees." FAC ¶¶ 27, 31; Pls.' Response 13:28-14:9. Although a permit holder's fees may come, in part or in full, from income generated through the business, neither the ordinance nor the regulations "*require*" permit holders to use their income in any particular manner. The City's regulations state:

> The Dispensary **shall not profit** from the sale or distribution of marijuana. Any monetary reimbursement that members provide to the dispensary should only be an amount necessary to cover overhead cost and operating expenses, including legal and operational expenses required as a result of the normal course of business. **Retail sales of medical marijuana that violate state law are prohibited**.

FAC Ex. A, Administrative Regulations and Performance Standards for Oakland Medical Cannabis Dispensaries, section IV, para. 4 (emphasis added). The City's ordinance does not contemplate that "dispensaries" will "profit" from running the marijuana cooperative, nor does it contemplate *any*

"sale" of marijuana that would violate state (or federal) law. Furthermore, it is within the City's discretion to set a fee scale for any City regulated industry – including "dispensaries."

**C. The City's ordinance is not an obstacle to the full purpose and objectives of the CSA.**

Obstacle preemption exists where, under the circumstances of a particular case, "the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona*, 641 F.3d at 345. The CSA established a federal regulatory system that was designed to combat recreational drug abuse by making it unlawful to manufacture, distribute, dispense, or possess a controlled substance. 21 U.S.C. § 801 *et seq.* The purpose of the CSA, however, was not to prevent states from legislating the manufacture, distribution, dispense, or possession of controlled substances in a medical context. *See, e.g., Cnty. of San Diego*, 165 Cal. App.4th at 825-26 (stating "[t]he purpose of the CSA is to combat recreational drug use, not to regulate a state's medical practices). Although the City acknowledges that the CSA does not formally acknowledge marijuana's medicinal purposes, its purpose is not to preempt a state's "medical" regulation. The California Court of Appeal has not affirmatively nor definitively ruled on this issue and, therefore, this Court has discretion to determine which reasoning to follow. Defendants urge the Court to apply the reasoning in *County of San Diego* and *Qualified Patients Ass'n* to conclude that the City's ordinance is not preempted.

Further, to the extent the City's ordinance poses some "obstacle" to the CSA's purpose, not every law posing "some de minimus impediment" will be preempted. *Cnty. of San Diego*, 165 Cal. App.4th at 826. Obstacle preemption only occurs where a "significant conflict" exists between an "identifiable" federal policy or interest and the operation of state law or application of state law would "frustrate specific objectives." *Id.* (considering the identification card laws and finding no significant impediment to specific federal objectives in CSA) (citing *Boyle v. United Techs. Corp.*, 487 U.S. 500, 507 (1988)). If, *arguendo*, aspects of the City's ordinance conflict with the purpose of the CSA – described above in section II.B – such "conflict" is a "de minimus impediment." *Id.*

In line with the purpose of the CSA as well as the CUA and MMP, section 5.80 *et seq.* specifically seeks to legislate in the area of controlled substances to regulate any "collective or cooperative" that "distributes, dispenses, stores, exchanges, processes, delivers, makes available, transmits and/or gives away marijuana." OMC § 5.80.010(C). While the City's permit process may create greater "exposure" for "dispensaries" to federal agencies, the process does not mandate violating any federal law. Further, Plaintiffs' argument that they face "self-incrimination" under federal law for compliance under state law is without merit. If Plaintiffs are operating a "warehouse" under federal law, simply paying City assessed fees and taxes – based on the City's regulatory scheme *and* the *City's* definition or label of "dispensary"– does not turn otherwise lawful conduct into a federal crime. Moreover, the permit process serves the City's goals to monitor those who are providing medical marijuana within the City. The City's cannabis ordinance, however, does not stand in the way of, nor as an obstacle to, the CSA's provision exempting a "warehouse" from registering as a controlled substances distributor.

**D. The Fifth Amendment "takings" claim is premature and, therefore, there is no underlying constitutional violation for a 42 U.S.C. § 1983 claim.**

Federal courts only possess the power authorized by the United States Constitution and statute. *Kokkonen, Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Plaintiffs argue that, even if federal preemption fails, they are still properly in federal court because they have a viable claim under 42 U.S.C. § 1983. Pls.' Response 21-22. Plaintiffs, however, are unable to state a viable, underlying constitutional violation for purposes of establishing a § 1983 claim.[1] *See* 42 U.S.C. § 1983 (stating that every person acting under color of state law who subjects a person to "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" shall be liable to the party injured). The Fifth Amendment prohibits the "taking" of private property without "just

---

[1] Plaintiffs argue that a § 1983 claim does not require exhaustion of state administrative remedies. That may be true. However, even if a § 1983 claim does not require exhaustion of state remedies, it requires an underlying constitutional violation. If Plaintiffs fail to exhaust state remedies to obtain "just compensation" they are unable to state a Fifth Amendment claim – the underlying constitutional violation necessary to state a viable § 1983 claim.

compensation." U.S. Const. amend. V. A Fifth Amendment claim is premature, however, until a property owner avails himself of the remedies provided under state law for obtaining just compensation. *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195 (1985) ("[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.")

The remedy provided under state law for Plaintiffs to "obtain just compensation" for their business being threatened by the City's administrative order is through a petition for administrative writ of mandate. Cal. Code Civ. Pro. § 1094.5; *see, e.g.*, *Clemes v. Del Norte Cnty. Unified Sch. Dist.*, 843 F. Supp. 583 (N.D. Cal. 1994) (stating that section 1094.5 "unquestionably provides" for the right to judicial review of a statutorily mandated administrative order or decision and this is a state – not federal – remedy). Until and unless Plaintiffs avail themselves of the remedies that are specifically articulated in the California Code of Civil Procedure for challenging an administrative decision (the mechanism through which the City allegedly "took" Plaintiffs' property), a Fifth Amendment "takings" clause claim is premature. *See, e.g.*, *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 958 (9th Cir. 2011) (plaintiff must first file petition for writ of mandamus in state court challenging the administrative decision before asserting an "as applied" takings challenge to rent control ordinance); *McGill v. Regents of Univ. of Cal.*, 44 Cal. App. 4th 1776, 1785 (Cal. Ct. App. 1996) (stating judicial review of most public agency decisions is obtained by a proceeding for a writ of ordinary or administrative mandate, and quasi-judicial acts are reviewed by administrative mandate). Without a viable, underlying constitutional violation, Plaintiffs' alternative basis for this Court's jurisdiction fails.[2]

[2] Plaintiffs allege that the Court can enjoin violations of the CSA pursuant to 21 U.S.C. § 882. FAC ¶ 48. Defendants agree that section 882 gives this Court jurisdiction to enjoin a violation of the CSA. However, Plaintiffs' preemption argument fails, there is no CSA violation and, thus, this Court has no jurisdiction to enjoin the City from enforcing its ordinance. Similarly, Plaintiffs cannot maintain a federal declaratory relief action if their preemption argument fails. The Court must find that the City's ordinance is preempted in order to have jurisdiction to consider the underlying merits of the City's administrative order.

## III. CONCLUSION

Oakland Municipal Code section 5.80 *et seq.* does not "positively conflict" with the CSA. Further, a Fifth Amendment "takings" claim is premature and, thus, cannot form the basis of the underlying constitutional violation for a § 1983 claim. Accordingly, this Court is without jurisdiction to hear Plaintiffs' claims. For these reasons, the City requests that the Court grant Defendants' motion to dismiss.

Date: January 19, 2016

BARBARA J. PARKER, City Attorney
OTIS McGEE, JR., Chief Assistant City Attorney
JAMES F. HODGKINS, Senior Deputy City Attorney
JAMILAH A. JEFFERSON, Senior Deputy City Attorney

By: /s/ Jamilah A. Jefferson
Attorneys for Defendants,
CITY OF OAKLAND, et al.