IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE HEMP'S FIRST HEMP BANK AND DISTRIBUTION NETWORK and DAVID CLANCY,<br><br>    Plaintiffs,<br><br>  v.<br><br>CITY OF OAKLAND, GREGORY MINOR, and DOES 1 through 10, inclusive,<br><br>    Defendants.<br>_____ / | No. C 15-05053 WHA<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

## INTRODUCTION

In this action for violations of civil rights under Section 1983 involving a marijuana "warehouse," defendants have moved to dismiss the first amended complaint. For the reasons stated below, defendants' motion is **GRANTED**.

## STATEMENT

Plaintiffs Joe Hemp's First Hemp Bank and Distribution Network and its founder, David Clancy, operated a supposed "closed distribution network" that provided "storage space" for marijuana to its "members" with two locations in Oakland. In July 2011, defendant City of Oakland adopted a regulatory scheme that required any entity operating a "dispensary" to apply for a permit and pay permit fees and annual fees. The City informed plaintiffs that they fell within the definition of dispensary under local law and must either apply for a permit and pay

the related fees or shut down. Plaintiffs declined to apply for a permit but continued to operate (Amd. Compl. ¶¶ 20, 25–29).

The City assessed civil penalties against plaintiffs. Plaintiffs appealed. After a hearing, an administrative order imposed fines and required plaintiffs to vacate their premises. Defendant Gregory Minor served as the Assistant to the City Administrator and sought to enforce the City's administrative order against plaintiffs (Amd. Compl. ¶¶ 1, 18, 30). Plaintiffs have not appealed that administrative order in state court.

Plaintiffs commenced this federal action in November 2015 seeking relief under Section 1983 arising out of defendants' enforcement of the permit scheme, which they contend is preempted by federal law, constitutes a taking without just compensation, and compels them to forfeit their rights against self incrimination. An order denied plaintiffs' request for a temporary restraining order enjoining the City from imposing fines (Dkt. No. 16). Defendants now move to dismiss. This order follows full briefing and oral argument.

**ANALYSIS**

The undersigned judge has previously held that it is inappropriate for a federal court to grant relief to an enterprise, such as a medical marijuana drug store, that is wholly illegal under federal law. *See Smith v. City of Berkeley*, No. 15-4227, 2015 WL 9269964 (N.D. Cal. Dec. 21, 2015). In this case, however, our plaintiffs claim they operated legally under federal law pursuant to the "warehouseman exemption" in the Controlled Substances Act.[1]

Plaintiffs' strategy is to evade prosecution under the Controlled Substances Act by labeling themselves "warehousemen" and to evade the City's permit scheme by claiming the scheme would force them to violate the Controlled Substances Act.

Plaintiffs' whole arrangement is a sham. Their customers are called "members." They go to the front desk, pay a "service fee," and get their regular dose of marijuana. The substance of this transaction is nothing more than a sale, which would place plaintiffs' business squarely

---

[1] Because it is a Schedule I controlled substance, it is illegal to "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense" marijuana. 21 U.S.C. 812(c), 841(a)(1). Section 822(c) of the Act exempts common carriers and warehousemen, *inter alia*, from liability for possession of Schedule I substances.

2

outside the protection of the warehouseman exemption and plainly in violation of federal law. As stated, it is inappropriate for a federal court to grant relief to an enterprise that operates wholly in violation of federal law.[2]

Nevertheless, this order presupposes, for the sake of argument only, that plaintiffs are, in fact, somehow exempt from liability for the possession of marijuana pursuant to Section 822(c) (although it in no way so holds). Even under this far-fetched assumption, plaintiffs' claims must be dismissed, inasmuch as nothing in the Controlled Substances Act precludes the City from regulating and taxing medical marijuana businesses, including those that qualify as "warehousemen" under the Act. Each of plaintiffs' claims is now addressed in turn.

### 1. PREEMPTION.

Plaintiffs' first claim is that the City's permit scheme is preempted by the Controlled Substances Act. The Controlled Substances Act only preempts State law to the extent "there is a positive conflict between [an applicable] provision of this subchapter and that State law so that the two cannot consistently stand together." 21 U.S.C. 903. Plaintiffs argue that several facets of the City's permit scheme make it impossible to comply with both federal and local laws and that the permit scheme poses an obstacle to the accomplishment of the purposes of the Controlled Substances Act. These conflicts, plaintiffs contend, result in the preemption of the City's permit scheme. *See Arizona v. United States*, 567 U.S. __, 132 S. Ct. 2492, 2501 (2012).

#### A. Laboratory Testing.

The Oakland City Administrator established regulations requiring, *inter alia*, laboratory testing of a dispensary's medical marijuana (Amd. Compl., Exh. A, Sec. IV ¶ 9):

> Representative samples of medical marijuana distributed by the collective shall be analyzed by an independent laboratory to ensure it is free of harmful contaminants regulated by local, state or federal regulatory statutory standards.

Plaintiffs contend that this laboratory-testing provision requires dispensaries to distribute marijuana to third parties in violation of the Controlled Substances Act, which defines

---

[2] If plaintiffs' "members" did not register to possess, use, or distribute marijuana under federal law, plaintiffs may also have aided or abetted their members' violations of the Controlled Substances Act, notwithstanding the warehouseman exemption.

3

"distribute" to mean "deliver," which in turn "mean[s] the actual, constructive, or attempted transfer of a controlled substance . . . ." 21 U.S.C. 802(8), (11).  The City merely requires samples of plaintiffs' marijuana to be analyzed, which could be done without transferring any marijuana to the laboratory, such as by having the testing conducted on site at plaintiffs' facility.  At oral argument on this motion, Attorney Jamilah A. Jefferson, who represents the defendants, acknowledged that a representative of an independent laboratory could come on premises to conduct the analysis, and there was no reason to believe that would run afoul of the City's requirement.  Indeed, providing a sample to a laboratory technician on premises is no less of a transfer for the purposes of the Controlled Substances Act than the plaintiffs' distribution of marijuana to their "members" who present medical marijuana prescriptions and pay "service fees."

Moreover, even if the independent lab work did require "distribution" under the meaning of the Act, this local requirement would not be preempted.  The Act exempts warehousemen, but it does not create a positive right to become one.  That is, there is no federal privilege to become a warehouseman for marijuana.  If local law makes it impossible to serve as a warehouseman because local law requires such activity as lab testing (assumed for a moment to be illegal under the Act) then the effect of the Act is to prohibit the activity, not to preempt the local requirement.  Again, there is simply no federal "right" to serve as a warehouseman.

Thus, this order holds that no positive conflict exists between the City's laboratory-testing requirement and the Controlled Substances Act.

Judge H. Walter Croskey reached an arguably contrary conclusion in *Pack v. Superior Court*, 132 Cal. Rptr. 3d 633, 648 (Cal. Ct. App. 2011).  That decision considered a similar permit scheme in Long Beach, which also required collectives to have samples of medical marijuana analyzed by an independent laboratory and held that provision conflicted with the Controlled Substances Act.  Judge Croskey was not presented with the scenario of the laboratory coming on site, which, as stated, Attorney Jefferson assured could be done in satisfaction of the City's requirements.  Accordingly, this order finds *Pack* distinguishable.

### B. Investing.

Pursuant to Section 854(a) of the Act, it is unlawful to "use or invest, directly or indirectly, any part of" income derived from violations of the Controlled Substances Act "in the acquisition of an interest" in an enterprise engaged in interstate commerce. Plaintiffs contend that the City's permit fees and annual fees require them to violate Section 854(a), but the fees bear no relationship whatsoever to the acquisition of an interest in a commercial enterprise. Thus, no positive conflict exists between the fees and Section 854(a).

### C. Aiding and Abetting or Conspiracy.

Plaintiffs argue that the City's permit scheme requires permit holders to aid and abet violations of the Controlled Substances Act or to conspire to commit such violations. Plaintiffs' argument fails because the permit scheme *itself* does not violate the Controlled Substances Act but rather regulates certain entities that do. A permit holder's compliance with that scheme does not, on its own, constitute aiding and abetting or conspiracy to commit violations of the Controlled Substances Act.

Again, as above, if compliance with the local ordinance would place a warehouseman in violation of federal law, then the answer is don't do it at all. There is no federal right to serve as a marijuana warehouse, so there is no federal right that preempts anything in this case.

### D. Obstacle Preemption.

Finally, plaintiffs contend that the City's permit scheme presents an "obstacle to the accomplishment and execution of the full purposes" of the Controlled Substances Act. *Arizona v. United States*, 572 U.S. at __, 132 S.Ct. at 2505. The purpose of the Controlled Substances Act is generally "to conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances." *Gonzales v. Raich*, 545 U.S. 1, 12 (2005). No such obstacle exists here because the United States remains free to enforce the Controlled Substances Act, and the City's permit scheme does nothing to impede any such efforts. Indeed, the City's permit scheme appears to serve the goal of controlling the traffic in controlled substances, albeit to a weaker degree than criminal sanctions (but to a stronger degree than complete deregulation).

5

It is often the case that state law decriminalizes conduct that federal law still prohibits. That state prosecutions can no longer occur in no way bars federal prosecutions. If "obstacle" preemption could have any possible role here, it would be the other way around — the entire medical marijuana regime would stand as an obstacle to the accomplishment of the Controlled Substances Act, and plaintiffs' entire industry would be shut down. This order does not find any such obstacle preemption, but makes the observation to underscore the fallacy in plaintiffs' theory.

Plaintiffs cite a 2011 letter from the United States Attorney for the Northern District of California, Melinda Haag, to the Oakland City Attorney, John A. Russo, regarding the permit scheme, which letter is appended to this order as Exhibit A. Plaintiffs selectively quote one portion of the penultimate paragraph of that letter as evidence that the City's permit scheme poses an obstacle to the purposes of the Controlled Substances Act:

> The Department is concerned about the Oakland Ordinance's creation of a licensing scheme that permits large-scale industrial marijuana cultivation and manufacturing as it authorizes conduct contrary to federal law and threatens the federal government's efforts to regulate the possession, manufacturing, and trafficking of controlled substances. Accordingly, the Department is carefully considering civil and criminal legal remedies regarding those who seek to set up industrial marijuana growing warehouses in Oakland pursuant to licenses issued by the city of Oakland. Individuals who elect to operate "industrial cannabis cultivation and manufacturing facilities" will be doing so in violation of federal law.

Plaintiffs read this quote as suggesting the permit scheme as a whole presents an obstacle to the enforcement of the Controlled Substances Act. Not so. United States Attorney Haag wrote in response to an inquiry from Attorney Russo specifically with regard to "industrial cannabis cultivation and manufacturing facilities" (not with regard to the permit scheme as a whole), as the opening paragraph indicates:

> I write in response to your letter dated January 14, 2011 seeking guidance from the Attorney General regarding the City of Oakland Medical Cannabis Cultivation Ordinance. The U.S. Department of Justice is familiar with the City's solicitation of applications for permits to operate "industrial cannabis cultivation and manufacturing facilities" pursuant to Oakland Ordinance No. 13033 (Oakland Ordinance). I have consulted with the Attorney General and the Deputy Attorney General about the Oakland

6

> Ordinance. This letter is written to ensure there is no confusion regarding the Department of Justice's view of such facilities.

Again, United States Attorney Haag's letter does not condemn the City's permit scheme as a whole, only its grant of permits to industrial-scale manufacturers. Moreover, even to that extent, United States Attorney Haag's statement that "the Department is carefully considering civil and criminal legal remedies" makes clear that nothing about the City's permit scheme inhibits the enforcement of the Controlled Substances Act.

Plaintiffs cite *Michigan Canners & Freezers Association, Inc. v. Agricultural Marketing & Bargaining Board*, 467 U.S. 461, 477–78 (1984), for the contention that a state law authorizing conduct forbidden by federal law may be preempted, but that is not our case. In *Michigan Canners*, a state law affirmatively empowered a professional association of agricultural commodities producers to bind nonmembers to certain marketing agreements without their consent in violation of a federal law prohibiting coercing such producers to enter those agreements. The Supreme Court held the federal law preempted the state law. Here, there is no federal right to serve as a warehouseman with which the permit scheme interferes.

\*     \*     \*

Plaintiffs have failed to demonstrate that the Controlled Substances Act preempts the City's permit scheme. Thus, their first claim is hereby **DISMISSED**.

**2. TAKING.**

Plaintiffs' second claim is for just compensation based on the regulatory taking they allege resulted from the City's enforcement efforts. Plaintiffs have failed to seek just compensation under Section 1094.5 of the California Code of Civil Procedure. Plaintiffs cannot state a claim premised on failure to pay just compensation before exhausting the procedures for such compensation available under State law. *See Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 958 (9th Cir. 2011). Thus, plaintiffs' second claim is hereby **DISMISSED**.

**3. SELF INCRIMINATION.**

Plaintiffs' third claim is that the City's permit scheme requires them to forfeit their Fifth Amendment rights against self incrimination by requiring them to admit they operate a "dispensary," which, so they argue, requires them to admit to a violation outside the protection

7

of the "warehouseman exemption." Unlike the definitions of "dispense," "distribute," and "deliver" in the Controlled Substances Act, the City's definition applies to an entity that "stores" or "makes available" marijuana. *Compare* 21 U.S.C. 802(8), (10), (11) *with* Oakland Mun. Code § 5.80.010(C). Thus, plaintiffs may acknowledge they fit the City's definition without implicating the Controlled Substances Act and thereby forfeiting their Fifth Amendment right against self incrimination.

Moreover, the permit application did not require applicants to admit anything. Rather, it stated, in pertinent part (Amd. Compl., Exh. A, Section V):

> AS YOU KNOW, THE CULTIVATION, POSSESSION, DISTRIBUTION AND SALE OF ANY TYPE OF CANNABIS, INCLUDING MEDICAL CANNABIS, IS PROHIBITED UNDER FEDERAL LAW.

The permit application further required applicants to agree to indemnify the City of Oakland from any prosecution resulting from that permit. Nothing in the permit application could be read as a direct admission of any illegal conduct.

Plaintiffs also attempt to read the letter from United States Attorney Haag, quoted above, as an indication that by complying with the City's permit scheme, plaintiffs will instantly become targets for prosecution by the federal government. The Haag letter comes down hard on industrial-scale manufacturing and only incidentally criticizes the Oakland permit system insofar as it enables such industrial-scale manufacturers. Complying with the permit scheme is not an admission that the applicant is an industrial-scale manufacturer, for the permit scheme covers far more marijuana operations than industrial-scale manufacturers.

In any case, plaintiffs can simply stop their activity and avoid having to admit anything, *i.e.*, get out of the business and avoid any penalties and admissions. If they choose to continue in an activity that is on the borderline of illegal under federal law, then they cannot escape compliance with local police regulation by saying compliance would constitute an admission under the Fifth Amendment. Accordingly, plaintiffs' third claim is hereby **DISMISSED**.

8

**CONCLUSION**

For the reasons stated above, defendants' motion to dismiss is **GRANTED**. Leave to amend will not be allowed, inasmuch as plaintiffs failed to state a cognizable legal theory for their claims, so any amendment would be futile. Judgment will be entered accordingly. This case is ready for appeal. The Clerk shall please **CLOSE THE FILE**.

**IT IS SO ORDERED.**

Dated: February 1, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE